# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed June 24, 1908.

### JACOB HESS
### VS.
### RALPH J. SAPERO.

*Aaron J. Simon* for receivers and purchasers.

*Isaac Lobe Straus* for defendant.

GORTER, J.—

Ralph J. Sapero and Jacob Hess, on the 13th day of July, 1906, entered into a co-partnership for the purpose of the manufacture and sale of boxes under the firm name of "Sapero Box and Storage Company." This business continued until January 21st, 1908, when Hess filed his bill of complaint in this court, alleging that differences had arisen between them, and prayed for receivers to wind up the affairs of the partnership. Sapero filed his answer to the bill on the 28th of January, admitting irreconcilable differences, but praying that the bill be dismissed. On the 11th of February, however, Sapero filed a petition in which he said the prayer in his answer that the bill be dismissed was inadvertently asked for, and he requested that he be allowed to amend so as to consent to the appointment of receivers. Leave was granted and the answer was so amended on its face. Upon the amendment of the answer the court immediately appointed Aaron J. Simon, who had been attorney for Hess, and Harry B. Wolf, who had been attorney for Sapero, receivers of the partnership assets. Upon the same day, to wit, February 11th, 1908, the receivers filed a petition, stating that the business as conducted was a paying one, and as the firm had quite a number of contracts pending it would be to the interest of all concerned to continue the business and *sell the same as a going concern.* The court thereupon passed an order authorizing and directing the receivers to continue the business of the Sapero Box and Storage Company until the same is sold, and to offer for sale at public auction for cash after giving the usual notice of said sale in a daily newspaper published in the City of Baltimore, the personal property, stock, contracts and effects, *good will,* rights and possession of the Sapero Box and Storage Company *as a going concern;* and that the said Aaron J. Simon and Harry B. Wolf, receivers, return to this court after said sale a full and particular account thereof.

The sale was duly advertised, and on February 26th, 1908, the receivers filed

their report of sale, in which they stated that they had sold on the 25th of February, 1908, to Jacob Hess and M. Benjamin Hess, the personal property consisting of a large stock of packing boxes, tools, clipping machines, 1 platform scale, 4 draft horses, 3 box wagons, 2 sets of double and 1 set of single harness, stable utensils, 2 desks, 1 lot of chairs, stove, iron safe, outstanding contracts, *good will, rights, possession, effects and every thing belonging to the Sapero Box and Storage Company as a going concern, at public auction for the sum of* $1,925.

On the same day, to wit, February 26th, 1908, the sale was finally ratified and confirmed. On the 29th day of February, 1908, the receivers, together with Jacob Hess and M. Benjamin Hess, the purchasers of the business of the Sapero Box and Storage Company, filed their petition in this court, which after referring to the proceedings and the sale, alleges "that since the sale the said Ralph J. Sapero has gone into the same business under the name so similar as to mislead the public, viz., Sapero Box Company, and is soliciting the customers of the old firm, and representing himself to be the Sapero Box Company (and not acquainting them with the fact that the good will of the old business has been sold) and to deal with him, all with the purpose of destroying the good will which was sold by your receivers, and placing the matter in that position that the customers of the old firm do not know to whom they ought legally and morally to deal with."

The prayer of this petition is in the following words:

"That an order may be passed restraining the said Ralph J. Sapero, his agents and employes from soliciting, either in person or by solicitor, or by mail, the customers of the Sapero Box and Storage Company, or from in any way destroying the good will of the Sapero Box and Storage Company as sold and announced at the sale by the receivers."

Upon the filing of the petition a preliminary injunction was granted as prayed in the petition.

On March 29, 1908, Sapero demurred to the petition, and moved to dissolve the injunction. The question thus raised by the petition and demurrer is this: Has Sapero the right, after the receivers' sale in this case, to personally solicit the customers of the old firm to deal with him?

To support the injunction the attorney for the purchasers has referred me to the following authorities:

Althen vs. Vreeland, 36 At. Rep. (N. J.) 479-481.

Acker vs. McGaw, 144 Fed. Rep. 864.

Newark Coal Co. vs. Spengler, 54 N. J. Eq. 354-9.

Burkhardt vs. Idem, 3 Amer. Law Rec. 413.

Richardson vs. West John, 9 Amer. L. Rec. 726.

Ranft vs. Reimers, 200 Ill. 386.

Zantwrzian vs. Bootnazian, 25 R. I. 151.

The attorney for the respondent, Sapero, has referred to the following authorities:

Cruttwell vs. Lye, 17 Ves. Jr. 335.

Walker vs. Mottram, 19 Ch. Div. 355.

Cottrell vs. Babcock, 54 Conn. 122.

Williams vs. Farrand, 88 Mich. 473.

Ward vs. Ward, 40 N. Y. St. Rep. 792.

Bergamini vs. Bostian, 35 La. An. 60.

Same vs. Same, 48 Amer. Rep. 216.

Close vs. Flesher, C. R. Gen. Term, 8 Misc. (N. Y.) 299.

Dwight vs. Hamilton, 113 Mass. 175.

We find most of these authorities collected in the 14th Vol. of the American and English Enc. of Law, 2nd Ed., at page 1091.

The subject there treated, under the title of "Good Will," sub-title "To Solicit Old Customers."

ENGLISH DOCTRINE—"The weight of authority in England favors the rule that the vendor is not entitled to canvas old customers, and may be restrained by injunction from soliciting any person who was a customer prior to the sale of the good will to continue to deal with the vendor or not to deal with the purchaser.

UNITED STATES AUTHORITIES—"It is generally held in the United States that in the absence of agreement to the contrary, the vendor may personally solicit his former customers, provided he does not hold himself out to the public as continuing the business he has sold. But in New Jersey the rule established by the English cases has been

followed, and the Ohio doctrine is to the same effect."

I have examined all the authorities to which I have been referred by the counsel for the respective parties, and have reached the conclusion that the weight of reason and justice, as well as authority, is with the petitioner, and justifies the injunction.

The history of the law upon this subject in England is briefly but accurately given in the opinion of the court in the case of The Newark Coal Co. vs. Spangler, 54 N. J. Eq. 359:

"It was said by Lord Justice Cotton, in Pearson vs. Pearson, 27 Ch. Div. 145, the real difficulty is to draw the line, and in this case by reason of this difficulty, he refused to hold that direct solicitation of the old customers could be restrained, and on this point overruled. Labouchere vs. Dawson, L. R. 13, Eq. 322, decided by Lord Romilly, and strongly approved by Sir George Jessel in Ginesi vs. Cooper, 14 Ch. Div. 596. But in a very late case the House of Lords has considered the whole subject, and in Trego vs. Hunt, App. Cas. 7 (1896), has overruled Pearson vs. Pearson, and finally settled the law in England in accordance with the doctrine of Labouchere vs. Dawson, viz: That where the good will of a business is sold without further provision, the vendor may set up a rival business, but he is not entitled to canvas the customers of the old firm, and may be restrained by injunction from soliciting any person who was a customer of the old firm before sale, to continue to deal with the vendor or not to deal with the purchaser. The doctrine is put upon the ground that these acts are direct and intentional dealings with the good will sold and efforts to destroy it, in which the vendor takes advantage of the business connection of the old firm.

Lord Hershel, pp. 20 and 21.

Thus it will be seen that by the decision of the Master of the Rolls, in the case of Labouchere vs. Dawson, decided in 1871, the vendor was not allowed to solicit the customers of the old business.

This case was overruled in 1884, by the case of Pearson vs. Pearson, holding that one who had sold the good will of a business could personally solicit the old customers.

In December, 1895, the House of Lords in the case of Trego vs. Hunt, approved the doctrine of Labouchere vs. Dawson, and overruled Pearson vs. Pearson. In this last case the Judges thoroughly considered and reviewed all the previous decisions on the subject. Lord Macnaughton in the concluding paragraph of his opinion says:

"The principle on which Labouchere and Dawson rests has been presented in various ways. A man may not derogate against his grant; the vendor is not at liberty to destroy or depreciate the thing which he has sold; there is an implied covenant, on the sale of good will that the vendor does not solicit the custom that he has parted with; it would be a fraud on the contract to do so. These as it seems to me are only different turns and glimpses of a proposition which I take to be elementary. It is not right to profess and to purport to sell that which you do not mean the purchaser to have; it is not an honest thing to pocket the price and then to recapture the subject of sale, to decoy it away or call it back before the purchaser has had time to attach it to himself and make it his very own."

The law of Trego vs. Hunt is the law of England today. The case of Althen vs. Vreeland, 36 At. Rep. 479, decided by the Supreme Court of New Jersey, lays down the doctrine, of Trego vs. Hunt, as does the case of Ranft vs. Remier, 100 Ill. 386.

Judge Morris in the decision of the Acker, Merril, Condit Company vs. McGaw, 144 Fed. Rep. 840; also fully recognized and applied the principle.

The authorities to the contrary all seem to have been decided, while Pearson vs. Pearson was the law of England, and they adopted it.

The case of Cottrell vs. Babcock, 54 Conn. 122, was decided in 1886, and is based upon Pearson vs. Pearson.

The case of Williams vs. Farrand, 88 Mich. 473, was decided in 1891, and is based upon Pearson vs. Pearson.

The case of Ward vs. Ward (Supreme Court Gen. Term, 40 N. Y. St. Rep. 792), was decided in 1891, and is based upon Pearson vs. Pearson. And I find the .case of Bergamini vs. Bostian, 35 La. An. 60, as reported in 48 Am. Rep. 216, has a note attached, also based upon Pearson vs. Pearson.

The cases in the United States relied upon by the respondent, have followed

the now overruled case of Pearson vs. Pearson.

But it contended that even if the doctrine of Trego vs. Hunt be good law the case at bar does not fall under that principle, because it is claimed the sale of the receivers so far as Sapero is concerned, is compulsory, and being compulsory the law is that Sapero is under no obligation to support the good will of the business which was sold to the petitioner.

In the first place, I think the facts of this case as shown by the proceedings hereinbefore set forth, indicate clearly that the sale was not compulsory but the voluntary act of both Hess and Sapero. That the sale of the business with its good will as a going concern was fully acquiesced in, if not urged, by both of the partners as most conducive to their interest.

In the second place it is doubtful whether the authorities relied upon to support the doctrine that in the case of a compulsory sale (in bankruptcy) the original owner of the business can solicit personally the old customers, go to that extent. The two cases relied upon are Cruttwell vs. Lye, 17 Ves., p. 355, and Walker vs. Mottram, 19 Ch. Div. 355. In speaking of them Lord Hershel, in the case of Trego vs. Hunt, L. R. App. Cas., 1896, p. 16, says:

"It is also material to observe what was the nature of the injunction then in question. It was whether the bankrupt was to be restrained from carrying on the trade which he was pursuing of carrying goods between Bristol, Bath and London. The Lord Chancellor held that he should not be so restrained; and I think it must now be taken as settled that the sale of the good will of a business even when the vendor himself is a party to the contract, does not impose upon him any obligation to refrain from carrying on a trade of the same nature as before. *But Lord Eldon certainly did not decide that such a vendor was entitled to solicit the customers of the old firm.* He was not asked for an injunction to restrain the defendant from so doing. It was sufficient for the decision of that case that, in the opinion of the Lord Chancellor, there was no principle arising out of the provisions of the bankruptcy law upon which the court could hold that the bankrupt ought not to engage in the same trade and by the same road as before; though I think that, so far, the opinion of the Lord Chancellor would have been the same if the sale of the business had been effected by the bankrupt himself."

In conclusion, it seems to me the ordinary dictates of justice would demand that where the good will of a business is sold, whether personally by the owners, or through receivers, or by a trustee in bankruptcy, the vendor, getting, as he does, the benefit from the proceeds of such sale, should not be permitted by personal solicitations of old customers to deprive the purchaser of that which he has sold him.

I will, therefore, sign a decree making the injunction permanent.